## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **HERBERT WILLOUGHBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **4:13-cv-01091** |
| **JASON CRIBBS;** | ) | |
| **SWIFT TRANSPORTATION CO. OF** | ) | |
| **ARIZONA, LLC; and THE HOME** | ) | |
| **DEPOT U.S.A., INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S MOTION FOR RULE 37 SANCTIONS FOR DISCOVERY ABUSE

COMES NOW, Plaintiff, Herbert Willoughby, and files this Motion for Rule 37 Sanctions for Discovery Abuse.

### INTRODUCTION

Plaintiff, a career truck driver for Swift Transportation, brought suit against Home Depot, among others, for severe injuries sustained while delivering freight to a Home Depot facility. Plaintiff alleges that Home Depot and/or its agents negligently operated the facility and forced him to perform his duties in an unsafe manner.

Plaintiff served a Notice of 30(b)(6) Deposition to Home Depot. Home Depot objected to some of the topics in the deposition. This Court sustained two

objections, but overruled the remainder, requiring that Home Depot prepare a deponent on the remaining topics in the notice.[1]

Home Depot's corporate designee, loss prevention officer Robert Archie, appeared for deposition on December 9, 2014. Mr. Archie's deposition was troubling in several respects. First, Mr. Archie had not been prepared by Home Depot, and he was unable to provide meaningful testimony on the deposition topics in the 30(b)(6) notice. Secondly, whenever it appeared that Mr. Archie actually knew something concerning a relevant line of inquiry, Home Depot's counsel repeatedly instructed the witness not to answer those questions. Finally, the deposition suffered from a grossly excessive amount of interruptions, objections, commentary, speaking objections, and witness coaching, all of which culminated in the improper decision of Home Depot's counsel to unilaterally terminate the deposition. Each of these offenses is independently sanctionable under Rule 37. Collectively, they form an egregious abuse of the discovery process, justifying firm action from this Court.

## ARGUMENT

### I.   Home Depot Violated Rule 30(b)(6) by Failing to Prepare its Corporate Designee.

Rule 30(b)(6) is designed "to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416,

---

[1] *See* Doc. 72, Court's Order on 30(b)(6) Deposition.

432-33 (5th Cir. 2006). Therefore, a defendant must "prepare those persons in order that they can answer fully, completely, unevasively, the questions posed...as to the relevant subject matters." *Id*. at 433.

"The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Id*. "The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.*  Under the 30(b)(6) deposition notice and this Court's Order allowing the same, Home Depot had a duty to prepare a deponent on the following topics at issue in this Motion:

- Communications between Home Depot and any other party to this suit.

- Home Depot's investigation of the accident in question.

- Home Depot's policies and procedures for trucks entering the Home Depot distribution center.

However, as shown below, Home Depot's deponent Mr. Archie was woefully unprepared to discuss these three topics, and Home Depot made no efforts to ensure that Mr. Archie was able to testify on the company's behalf.

**A.    Mr. Archie was not prepared to discuss Home Depot's communications with co-Defendants.**

Home Depot had a duty to prepare Mr. Archie to discuss any conversations between Home Depot and any other party to this suit. During his deposition, Mr. Archie discussed a phone conversation he personally had with an employee of co-

defendant Swift Transportation. When asked if that was "the extent of any conversation Home Depot has had with Swift concerning the investigation," Mr. Archie stated "I could not answer that."[2] Plaintiff's counsel sought clarification:

> Q.   No. 6 here says that one of the topics you're going to discuss with me is "Any and all conversation had between Home Depot and any other party to this suit regarding the incident in question. This includes conversations taking place prior to the execution of a joint defense agreement." Do you understand that?
>
> A.   Yes.
>
> Q.   Today, though, you're prepared to discuss only what conversations you personally have had with Swift or any other party, fair?
>
> A.   Yes.  That's correct.
>
> Q.   With regard to what conversations Home Depot has had in its investigation of this incident or anything concerning that investigation, that's something you're not prepared to answer?
>
> A.   I could not answer what they've talked about, no, sir.[3]

Despite Home Depot having actually litigated the subject matter of this deposition topic, Mr. Archie was still not prepared to testify. Home Depot has no valid excuse for failing to prepare Mr. Archie to discuss Home Depot's communications with co-defendants.

---

[2] *See* Exhibit 1, Deposition of Robert Archie, at 38:14 to 38:17.
[3] *Id.* at 38:23 to 39:14

**B.     Mr. Archie was not prepared to discuss Home Depot's investigation of the accident.**

Mr. Archie was totally unprepared to discuss any of the findings of the investigation. Mr. Archie did not know if a denial letter has been issued.[4] He does not know "if Home Depot has either accepted or denied this claim or something in between."[5] He knew nothing of the investigation's conclusions:

Q.     So, the ultimate outcome of this investigation you're unaware of?

A.     Correct.[6]

Mr. Archie confirmed he only knew information about actions undertaken by the local Home Depot store employees, and not the investigation conducted by Home Depot corporate:

Q.     So, you're only familiar with the investigation of the claim at the local level?

A.     Yes.

Q.     Okay.  So, what happens after the local level -- and we'll consider the local level Houston, right?

A.     Right.

Q.     What happens after the local level is something you're not privy to?

A.     We're just responsible for doing the facts of what -- who, what, when, where, and how.  We report it up and then that determination is made at a level with

---

[4] *Id.* at 33:1.
[5] *Id.* at 33:4-7.
[6] *Id.* at 33:9-11

> Sedgwick or the company itself to determine who was
> at fault.
>
> Q.      Okay.  And you're unaware of what, if anything, has
>         occurred with regard to that?
>
> A.      That's correct.[7]

Mr. Archie's inability to discuss Home Depot's corporate investigation hindered Plaintiff from conducting discovery into the crucial findings of that investigation. Moreover, even when it came to the local investigation, Mr. Archie was inadequately prepared, and could not discuss the reports and findings of the local investigation. Mr. Archie stated that Michelle Pinkerington was responsible for reporting the facts based on the investigation on the day of the accident[8], but Mr. Archie did not know what she reported:

> Q.      Has Michelle [Pinkerington] determined whose fault
>         that is?
>
> A.      I couldn't answer that.[9]

Mr. Archie was also unaware of basic facts from the statements of the witnesses in the investigation, such as the fact that Mr. Willoughby reported to the security guards that his truck was damaged:

> Q.      You are unaware -- sitting here today based upon your
>         preparation for this deposition in responding to the
>         investigation of this accident, you are unaware that
>         Mr. Willoughby had previously made it very well-
>         known to the guards in his testimony that the
>         tandems on his truck were not functioning properly?

---

[7] *Id.* at 34:25 to 35:20
[8] *Id.* at 36:15.
[9] *Id.* at 37:20-23.

A.        That's correct.  I was not aware.[10]

In sum, Mr. Archie was unable to give meaningful testimony regarding the

investigation undertaken by Home Depot, either locally or at the corporate level.

**C.     Mr. Archie was not prepared to discuss policies and procedures for trucks entering the Home Deport distribution center.**

Mr. Archie was designated to testify concerning the "policies and procedures

for trucks entering the Home Depot distribution center." This lawsuit involves an

instruction from Home Depot personnel to a truck driver to adjust his trailer's

tandems. Mr. Archie acknowledged that Home Depot had a policy concerning

tandem adjustment, but knew little about the policy. He stated that he was "not sure

when it was created." Further, he was unable to discuss whether Home Depot gave

any notice of its policy to Swift Transportation:

Q.        Did Home Depot ever provide to Swift Transportation a bulletin, information, or anything like that that said before your drivers come onto our property, they've got to have their tandems slid to the rear?

A.        I couldn't answer that.  I'm not sure on communication there.[11]

Furthermore, Home Depot's policies and procedures for trucks entering the

Home Depot distribution center are entirely overseen by its security guards, who

control access to the facility. However, Mr. Archie was unprepared to discuss the

---

[10] *Id.* at 68:13-19.
[11] *Id.* at 57:1-7

security guards, their role in the accident, and how Home Depot prepares them to implement these policies and procedures.

Mr. Archie did not speak with either security guard, Ms. Douglas or Mr. Luna, in preparing for the deposition.[12] He does not know which guard was involved in this incident:

> Q.   Do you know sitting here today, based upon your investigation of the accident and knowledge of that investigation, which guard it was who instructed Mr. Willoughby to move their tandems before entering the yard?
>
> A.   No, sir, I don't.[13]

Moreover, in terms of Home Depot's expectations of the security guards on this subject, Mr. Archie admits that he "couldn't answer that."[14] Plaintiff's counsel showed Mr. Archie a copy of "a contract between Home Depot and U.S. Security Associates," and Mr. Archie stated he had not seen the contract prior the deposition.[15] Mr. Archie admitted that he did not "have any knowledge about why Home Depot has requested U.S. Security to do certain functions within its job."[16] Additionally, as shown in Section II of this Motion, Mr. Archie was instructed by his counsel not to answer multiple questions relating to how Home Depot instructs its security guards regarding entrance of trucks to facility.

---

[12] *Id.* at 41:25; 43:5
[13] *Id.* at 51:14-19.
[14] *Id.* at 53:11
[15] *Id.* at 53:17.
[16] *Id.* at 53:18-21.

Near the end of the deposition, Mr. Archie took a break to review the security contract. Upon returning, he stated that the reason the Home Depot policies were not in the contract is that they were actually contained in a detailed addendum which had never been produced to Plaintiff:

A.      No, they're not listed there. They are listed in the SOP [Standard Operating Procedure] that's given to the guards.

Q.      Okay.  The SOP given to the guards by –

A.      By –

Q.      -- Home Depot?

A.      -- Home Depot, yes.

Q.      What else is in that SOP?

A.      SOP basically is the check-in process of the trucks. It's a detailed document.[17]

At this point, the deposition was paused again. When Home Depot's counsel returned, he suddenly produced three corporate documents entitled "Arriving Trucks/Trailers SOP," "Dock and Yard Safety SOP," and ""Dock and Yard Safety Rules."[18] These memoranda contain extensive documentation of the policies and procedures for trucks entering the facility:

---

[17] *Id.* at 59:25 to 60:8
[18] *Id.* at 62:1-4.







These detailed memoranda set forth rules regarding nearly every issue under contention in this case, from rules governing security guard inspections of trucks, rules governing driver conduct, rules governing truck damage, and many, many more. Neither Plaintiff nor the witness reviewed these crucial documents in advance of the deposition. Before resuming the deposition, Plaintiff's counsel stated:

> I've just been given in excess of 70 pages of documents that directly concern arrival of truck and trailers and safety at the dock with regard to policies and procedures. I'm not going to argue about it. I'm just putting it on the record that this is something that should have been produced quite some time ago. It is defendant's obligation, duty to ask for a protective order however they see fit. It's not plaintiff's duty to do so. These documents should have been produced as they were

> requested and there was no way for plaintiff to tell what
> documents had been produced or had not been produced
> based upon the production that's already been given.  So, we
> didn't know what was left out.[19]

In any case, Mr. Archie had been designated to provide testimony concerning Home Depot's "policies and procedures for trucks entering the Home Depot distribution center," but he had not been provided with Home Depot's memoranda which sets forth the procedure for arriving trucks and trailers, nor the document which sets forth the yard and dock safety rules.

In fact, Mr. Archie did very little in advance of the deposition:

> Q.   What, in addition to talking to your attorney, did you
>      do to prepare for this deposition today?
>
> A.   I reviewed the -- upon talking with my attorney,
>      reviewed the documents that were presented for trial
>      and I spoke with Ms. Vickers as well.
>
> Q.   What documents did you review?  Because we haven't
>      had trial yet obviously.
>
> A.   The documents that you produced today.
>
> Q.   I got you.  Any other documents other than what I've
>      shown you today that you reviewed in anticipation of
>      your testimony?
>
> A.   No, sir.[20]

The documents shown to the deponent by Plaintiff at that point consisted of an initial accident report, the deposition notice, and a contract with Home Depot and

---

[19] *Id.* at 61:25 to 62:13

[20] *Id.* at 40:10-16. It should be Note that this testimony was given prior to Home Depot's counsel production of the safety rules and SOP's.

its Security Company. However, Mr. Archie acknowledged that that he had never seen the deposition notice[21] or the security contract[22] prior to the deposition. Despite lacking personal knowledge of the any of the relevant events in this case, Mr. Archie only reviewed a single document – an accident report – and he only spoke to a single employee – the local employee who filled out the accident report.[23]

### D.   Home Depot's failure to prepare its corporate designee requires a remedy under Rule 37.

Home Depot "violated rule 30(b)(6) by failing to prepare [its witness] with respect to issues that although not within his personal knowledge, were within the corporate knowledge of the organization." *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir. 2006). If a 30(b)(6) designee "is not knowledgeable about relevant facts...then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. S. Union Co.,* 985 F.2d 196, 197 (5th Cir. 1993).

Rule 37(b)(2) provides that:

> If...a witness designated under Rule 30(b)(6)...fails to obey an order to provide or permit discovery...the court where the action is pending may issue further just orders.

Such just orders include the following:

- directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

---

[21] *Id.* at 5:7-14
[22] *Id.* at 23:17.
[23] *Id.* at 40:9.

- prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

- striking pleadings in whole or in part;

- staying further proceedings until the order is obeyed.

Under these facts, most traditional sanction is this situation is an evidentiary limitation. Traditionally, this sanction would take the form of a prohibition on evidence: "When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject." *Function Media, L.L.C. v. Google, Inc.,* 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010). However, in this context, such a sanction would actually be counter-productive. Home Depot's motivation in failing to prepare its witness (and its instructions not to answer, discussed below) is to prevent information from being discovered. Therefore, a sanction that limits Home Depot's introduction of evidence therefore has little deterrent effect when the goal of the defendant was to hide the evidence in the first place. For this reason, an evidentiary finding would have a greater effect at deterring the conduct. The prejudice suffered by Plaintiff in this case merits a creative sanction, especially in light of defense counsel's instructions not to answer and the excessive interruptions of the deposition, discussed more fully below.

Moreover, costs should be assessed against Home Depot for the time and expense of the deposition. Rule 37(b)(2)(C) authorizes an award of reasonable

expenses, including attorney's fees, caused by the failure. This Court has held that monetary sanctions are appropriate when Rule 30(b)(6) duties are not met. *See Citgo Petroleum Corp. v. Odfjell Seachem*, No. CIV.A. H-07-2950, 2013 WL 2289951, at *10 (S.D. Tex. May 23, 2013)(granting monetary sanctions for failure to prepare corporate designee).

## II.   Home Depot Frustrated the Purpose of the Deposition with Improper Instructions not to Answer.

This Court should also assess Rule 37 sanctions because Home Depot's counsel repeatedly instructed the witness not to answer relevant questions. Counsel defended his repeated instructions by claiming that the questions went beyond the scope of the 30(b)(6) deposition notice.

The instructions from Home Depot's counsel were improper for two reasons. First, the questions posed to the witness reasonably concerned the matters set forth in the deposition notice, and are topics for which the witness should have been prepared to answer. Second, and more importantly, it is immaterial whether the questions concerned matters set forth in the deposition notice, as that is not a valid basis to instruct a witness not to answer in a 30(b)(6) deposition. In the Western District of Louisiana, the court in *Todd v. Precision Boilers, Inc.* assessed sanctions for identical conduct in a 30(b)(6) deposition, where "the instructions not to answer were based on counsel's erroneous belief that the witnesses were not permitted to be asked about matters not specifically contained in the areas of inquiry listed in the deposition notice or to be questioned about matters in the witnesses' personal

knowledge. Counsel also instructed the witnesses not to answer any questions in any area in which they were not specifically designated to testify, without regard to whether the witness had knowledge to answer the question or not." *Todd v. Precision Boilers, Inc.,* 2008 WL 4722338, at *1 (W.D. La. Oct. 24, 2008).

The court in *Precision Boilers* explained the flaw underlying Defendant's improper instructions not to answer:

> In accordance with Rule 26(b)(1), the witnesses may be examined on any nonprivileged and relevant matters within their knowledge and questioning is not limited to the areas of inquiries or topics set forth in the notice of deposition. If the deponent can answer the question, the examining party has a right to that relevant information. If the deponent does not know the answer and it is not one on which he was required to prepare under Rule 30(b)(6), he can say so and no interjection by counsel is necessary or appropriate. The designation of areas of inquiry for the deposition required under Rule 30(b)(6) limits the subject matter the deponent is required to prepare for, but does not restrict the examining attorney's inquiry. *See King v. Pratt & Whitney,* 161 F.R.D. 475 (S.D.Fla.1995), *aff'd.* 213 F.3d 646 & 647 (11th C.2000). *See also Cabot Corp. v. Yamulla Enterprises, Inc.,* 194 F.R.D. 499 (M .D.Pa.2000). A party should not be hamstrung in its attempt to obtain relevant information which a witness possesses.

*Todd v. Precision Boilers, Inc.,* 2008 WL 4722338, at *3 (W.D. La. Oct. 24, 2008).

Numerous other courts have addressed this exact issue, holding that an objection to a question as outside the scope of the 30(b)(6) is not a valid basis to give an instruction not to answer. *See, e.g., ZCT Sys. Grp., Inc. v. FlightSafety Int'l,* 2010 WL 1257824, at *2 (N.D. Okla. Mar. 26, 2010) ("instruction not to answer on 30(b)(6) scope grounds was improper"); *Batts v. County of Santa Clara*, 2010 WL

545847 (N.D.Cal. Feb.11, 2010) (instructing a witness not to answer a question on grounds that it was outside the scope of the 30(b)(6) notice was "clearly improper."); *Detoy v. City and County of San Francisco*, 196 F.R.D. 362 (N.D.Cal.2000) ("If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (*i.e.* Fed.R.Civ.P.26(b)(1)"); *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D.Fla.1995), *aff'd.* 213 F.3d 646 (11th Cir. 2000) (allowing questioning beyond the areas listed in a Rule 30(b)(6) notice); *Paparelli v. Prudential Insurance Co.*, 108 F.R.D. 727, 730-731 (D.Mass.1985) (improper to instruct a witness not to answer on the grounds that questions were outside the scope of the 30(b)(6) notice). As stated by the court in *FlightSafety Int'l*, "Counsel's instructions not to answer was clearly improper, in violation of the Federal Rules and unreasonably obstructed the depositions." *FlightSafety Int'l,* 2010 WL 1257824, at *2 (N.D. Okla. Mar. 26, 2010).

An examination of the deposition transcript shows that the instructions not to answer by Home Depot's counsel hamstrung Plaintiff's attempt to obtain relevant information possessed by this witness. Moreover, the questions at issue directly relate to the deposition topics, making the instructions not to answer all the more egregious.

**A.    Home Depot's counsel instructed Mr. Archie not to answer how Defendant instructs its employees on distribution center procedures.**

The first instruction not to answer arose when Plaintiff's counsel asked how Home Depot instructs its employees concerning yard safety procedures and policies:

> Q.      Within the boundaries of Home Depot's premises, after you get past that guard shack, I'm asking do you provide any training to the other Home Depot employees in that yard in terms of execution of proper safety procedures within that yard?
>
> A.      If they're –
>
> MR. NOVAK:   I'm going to go ahead and object and instruct him not to answer as it's outside the subpoena scope of the -- for your deposition.[24]

It should be noted that Home Depot's counsel made this objection without an understanding of the content of the Court's order. In fact, when Plaintiff's counsel raised the issue of the Court's order, Defendant's counsel had to ask Plaintiff's counsel for a copy of the order so he could review it ("Can I see that?")[25]. In any case, Plaintiff's counsel asked Home Depot's counsel to reconsider:

> I would like to go ahead and get an agreement that I can ask him because I'm allowed to ask him about Home Depot's policies and procedures for moving tandem trucks for entering the Home Depot distribution center at the time of loss...It also includes the yard, the movement of the yard, where someone might could or could not pull off in the yard, what employees are instructed to do when a truck enters, what employees are instructed to do when a truck doesn't enter, where they're supposed to go if they can't enter, where they can be if they do enter...So, in terms of conducting safe movement of vehicles within the yard, I

---

[24] *Id.* at 17:24 to 18:7
[25] *Id.* at 20:20

> certainly believe that that's relevant and his training and any
> type of background as it concerns that is also relevant.[26]

Nonetheless, Home Depot's counsel continued to instruct the witness not to answer, despite the fact that the witness stated that he possessed discoverable knowledge on the subject:

> Q.   I'm not going to ask you about what that knowledge is
>      because your attorney won't let me. But for the
>      purposes of the record, you have knowledge with
>      regard to the training employees receive on Home
>      Depot's premises with regard to safe operation -- or
>      with regard to safety in the loading area or the dock
>      area, fair?
>
> A.   That's fair.[27]

As the court stated when assessing sanctions in *Precision Boilers*, it does not matter if Home Depot felt the topic was outside the deposition notice; "If the deponent can answer the question, the examining party has a right to that relevant information." *Todd v. Precision Boilers, Inc.,* 2008 WL 4722338, at *3 (W.D. La. Oct. 24, 2008).

Moreover, any reasonable interpretation of the deposition topic would put Home Depot on notice that the witness may be questioned about how Home Depot instructs its employees concerning policies and procedures for entry into the distribution center. In Home Depot's view, it was only obligated to provide a witness

---

[26] *Id.* at 18:9 to 18:25
[27] *Id.* at 20:7-14.

who could state that a policy existed, yet not provide any testimony about how the policy was implemented or communicated to employees.

However, just as in the Eastern District's decision in *Function Media*, "[a] reading of the notice to require the identification of a witness to testify only as to the literal terms of the agreements is simply unreasonable in the context of this case." *Function Media, L.L.C. v. Google, Inc.,* 2010 WL 276093, at *2 (E.D. Tex. Jan. 15, 2010). In *Function Media*, Google was asked to prepare a deponent on the subject of the "license agreements" in the case. Google's deponent refused to testify about any background, such as the creation or execution of those agreements. The Court noted that "requiring [Plaintiff] to take multiple depositions to learn the facts underlying the execution of the license agreements would unnecessarily increase the cost of litigation and reward Google for its failure to comply with the rules." *Function Media, L.L.C. v. Google, Inc.,* 2010 WL 276093, at *3 (E.D. Tex. Jan. 15, 2010).

Ultimately, as *Precision Boilers* shows, it does not matter whether the question was even related to the topic of distribution center policies and procedures. Yet the fact that the question was related to that topic only exacerbates Home Depot's conduct, a pattern that continued throughout the deposition.

### B. Home Depot's counsel instructed Mr. Archie not to answer questions related to actions taken as a result of Home Depot's investigation.

As noted above, Mr. Archie was unable to provide answers concerning the conclusions of Home Depot's investigation. Yet when Plaintiff's counsel asked Mr.

Archie about actions taken as a result of the investigation, Home Depot's counsel then instructed Mr. Archie not to answer:

> Q.       Do you have knowledge about whether or not any type of action was taken or any type of action was requested be taken by Home Depot of U.S. Security Associates with regard to these witnesses?
>
> MR. NOVAK:            I'm instructing him not to answer.[28]

Plaintiff's counsel attempted to rephrase the question:

> Q.       Did Home Depot determine a course of action based upon its investigation into this incident with regard to the U.S. Security guards on duty that day?
>
> MR. NOVAK:            I'm instructing him not to answer.[29]

Plaintiff's counsel then took a break and suggested that Home Depot's counsel "talk to your witness and find out the answer to that question and determine whether you're going to let him answer before we put this in front of the Court."[30] After the break, Home Depot's counsel indicated that he was "prepared to go court on this."[31]

There is no valid reason for counsel's instruction not to answer. If the investigation resulted in action being taken with respect to the security guards, that information is plainly discoverable, and counsel's instruction serves no other purpose than to suppress relevant evidence.

---

[28] *Id.* at 45:14 to 45:17.
[29] *Id.* at 46:19 to 47:1.
[30] *Id.* at 47:6-9.
[31] *Id.* at 49:4.

**C.**     **Home Depot's counsel instructed Mr. Archie not to answer questions relating to Home Depot's instructions to its security guards concerning  in the freight yard.**

Home Depot has a contract with U.S. Security concerning security guards. As noted above, the contract includes a document defining the Standard Operating Procedures (SOP) for the security guards as it relates to freight entering the facility. That document, which was produced for the first time towards the end of the deposition, requires the security guards to "inspect the trailers for damage."[32] Plaintiff's counsel asked how this policy was implemented among the guards:

> Q.       What type of training does that guard receive so that they can understand how to properly execute this policy of looking for damage?
>
> MR. NOVAK:    I'm going to object to the question as being outside the scope of the subpoena and instruct him not to answer.[33]

When Plaintiff's counsel objected to yet another improper instruction not to answer, Home Depot's counsel decided to unilaterally terminate the deposition and remove the witness, stating, "I'm stopping it."[34] Counsel for Home Depot had no valid basis to terminate the deposition.

In *Rangel v. Gonzales Mascorro*, this Court considered another case involving improper instructions not to answer followed by a termination of the deposition.

---

[32] *Id.* at 71:24
[33] *Id.* at 72:12-17
[34] *Id.* at 75:7.

This Court noted that a deposition can only be terminated under certain circumstances. When "the deposition is being conducted in an abusive manner (*i.e.,* in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3)." *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 (S.D. Tex. 2011). However, there was nothing unreasonably embarrassing or oppressive about the deposition questions in this case.

Moreover, in *Rangel*, questioning counsel grew "noticeably irritated with Ms. Ceaser's improper instructions to Plaintiff Rangel," and this Court noted that counsel "did raise his voice at Ms. Ceaser during a few of the exchanges between counsel." *Id.* at 592. This Court held that "under the circumstances, his actions were not so "abusive, harassing, or unprofessional" as to warrant termination of Plaintiff Rangel's deposition." *Id*. The termination of the deposition by Home Depot's counsel had no justification; rather, it is consistent with the obstruction shown by counsel through the deposition.

### III.  Home Depot's Counsel Abused the Deposition Process Through Excessive Interruptions, Speaking Objections, and Commentary in Front of a Witness.

A recent opinion from the Northern District of Iowa exhaustively discussed the problem of excessive deposition interruptions, noting that they "are an independent reason to impose sanctions." *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott*

*Labs.*, 299 F.R.D. 595, 609 (N.D. Iowa 2014). The *Abbot Labs* opinion also garnered attention due to the fact that the court's sanctions included a command to produce a training video on deposition objections. The opinion examined the serious problem of a legal culture that encourages excessive objection, obstruction, coaching, and interruption of testimony.

In the *Abbott Labs* opinion, the court noted that "Counsel's interruptions while defending depositions were grossly excessive. Counsel's name appears at least 92 times in the transcript of the Barrett–Reis deposition (about once per page)." *Id.* In *Phillips v. Manufacturers Hanover Trust Co.*, 1994 WL 116078 (S.D.N.Y. Mar. 29, 1994), a lawyer was sanctioned when he "objected or otherwise interjected during [the examiner's] questioning of the deponent at least 49 times though the deposition lasted only an hour and a half. Indeed, approximately 60 percent of the pages of the transcript contain such interruptions."

In the instant case, the name of Home Depot's counsel, Mr. Novak, appears 108 times in an 80 page transcript, averaging more than once per page. Mr. Novak constantly interrupted the deposition, made extensive commentary in front of a witness, and made numerous unfounded speaking objections. Mr. Novak even went so far as to object to the questioning of an adverse witness as leading.[35]

Moreover, many of Mr. Novak's numerous interruptions contained commentary that coached the witness. To cite one example, Mr. Novak complained

---

[35] *Id.* at 41:4.

about a line of inquiry that "He told you they were trained by U.S. Security."[36] When the question was put to the witness again, Mr. Archie stated, predictably, "The training is provided by U.S. Security."[37] "The effectiveness of [witness] coaching is clearly demonstrated when the [witness] subsequently adopts his lawyer's coaching." *McDonough v. Keniston,* 188 F.R.D. 22, 24 (D.N.H.1998). For this reason, lawyers may not comment on questions in any way that might affect the witness's answer. "The Federal Rules of Evidence contain no provision allowing lawyers to interrupt the trial testimony of a witness to make a statement. Such behavior should likewise be prohibited at depositions, since it tends to obstruct the taking of the witness's testimony." *Hall v. Clifton Precision*, 150 F.R.D. 525, 530–31 (E.D.Pa.1993).

Mr. Novak also influenced the witness by complaining that questions were "speculative," after which the witness would ask for the question to be clarified.[38] This problem was also discussed in *Abbott Labs*. The court noted that:

> Despite the Federal Rules' prohibition on witness coaching, Counsel's repeated interjections frequently prompted witnesses to give particular, desired answers...Counsel often made 'clarification-inducing' objections—objections that prompted witnesses to request that the examiner clarify otherwise cogent questions. For example, Counsel regularly objected that questions were "vague," called for "speculation," were "ambiguous," or were "hypothetical." These objections usually followed completely reasonable questions. But, after hearing these objections, the witness would usually ask for clarification.

*Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs.,* 299 F.R.D. 595, 604 (N.D. Iowa 2014).

---

[36] *Id.* at 73:1.

[37] *Id.* at 75:23.

[38] *Id.* at 34:3-4.

When defending his excessive interruptions, Mr. Novak stated that "You want me to sit here and shut up. Objection to form is not a consistent objection in Federal court.  I have to put my objections on the record."[39] However, as noted in the Eastern District's opinion in *Turner v. Glock, Inc.*, "objections to questions during an oral deposition must be limited to 'Objection, leading' and 'Objection, form.' These particular objections are waived if not stated as phrased above during the oral deposition. The objecting party must provide a 'clear and concise explanation of an objection if requested by the party taking the oral deposition, or the objection is waived.'" *Turner v. Glock, Inc.*, 2004 WL 5511620, 1, 999 (E.D. Tex. Mar. 29, 2004).

Other courts have agreed that speaking objections are improper. *See Druck Corp. v. Macro Fund (U.S.) Ltd.,* 2005 WL 1949519, at *4 (S.D.N.Y. Aug. 12, 2005) ("Any 'objection as to form' must say only those four words, unless the questioner asks the objector to state a reason."); *Cincinnati Ins. Co. v. Serrano*, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012) ("But such an objection to avoid a suggestive speaking objection should be limited to an objection 'to form,' unless opposing counsel requests further clarification of the objection.") The 1993 advisory notes to Fed. R. Civ. P. 30 also note that "[d]epositions frequently have been unduly prolonged...by lengthy objections and colloquy" and that objections "ordinarily should be limited to those...grounds that might be immediately obviated, removed, or cured, such as to the form of a question").

---

[39] *Id.* at 76:5 to 76:7.

The *Abbott Labs* opinion explains the basis for sanctions in all these forms of abuse – excessive objections, interruption, colloquy, commentary, and speaking objections. These tactics "frustrated the free flow of the depositions Counsel defended," and amount to sanctionable discovery abuse in and of themselves. *Abbott Labs.*, 299 F.R.D. at 606.

## CONCLUSION

From start to finish, this deposition was defended with obstruction in mind. First, Home Depot's counsel designated a local employee with no personal knowledge of the facts. Then, Home Depot failed to prepare the witness to give meaningful testimony on the deposition topics. Next, whenever Home Depot's designee appeared to possess relevant information, Home Depot's counsel improperly instructed the witness not to answer. The entire deposition was plagued by excessive interruption and commentary. Finally, Home Depot's counsel made the improper decision to terminate the deposition. For all of these reason, this Court should issue appropriate sanctions under Rule 37.

Respectfully submitted,

**FARRAR & BALL, LLP**

*s/ William R. Ogden*

WESLEY TODD BALL
State Bar No. 24038754
Federal Bar No. 431881
wes@fbtrial.com
WILLIAM  R. OGDEN
State Bar No. 24073531
Federal Bar No. 2202355
bill@fbtrial.com

1010 Lamar, Suite 1600
Houston, Texas 77002
713-221-8300
713-221-8301 Fax


## **CERTIFICATE OF SERVICE**

I hereby certify  that I have served a true and correct copy of this answer to Defendant Swift's counter claim upon each attorney of record via Electronic Service and the original upon the clerk if court via electronic Service this 19th day of November, 2014.


   _/s/ William R. Ogden_____

WILLIAM R. OGDEN