UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HERBERT WILLOUGHBY AND § | | |
| THERESE WILLOUGHBY, § | | |
| *Plaintiffs*, § | | |
| § | | |
| vs. § | CIVIL ACTION H-13-1091 | |
| § | | |
| JASON CRIBBS, *ET AL.*, § | | |
| *Defendants*. § | | |

## SUMMARY JUDGMENT OPINION AND ORDER

Pending before the court is the motion for summary judgment of defendants Jason Cribbs and Swift Transportation Co. of Arizona, LLC (collectively Swift) (Dkt. 76). The motion is denied.

**Background**

The following facts are undisputed for purposes of summary judgment unless otherwise noted. On June 4, 2012, Herbert Willoughby was working as an independent owner-operator truck driver for Swift and was mentoring a new driver employed by Swift, Jason Cribbs.[1] On that day, Willoughby and Cribbs arrived at the Home Depot distribution center in Houston, Texas to deliver a trailer of goods. A security guard working at the Home Depot facility[2] stopped the truck and told Willoughby that he could not enter the facility

---

[1] On August 3, 2004, Herbert Willoughby signed a Contractor Agreement and a Mentor Agreement with Swift Transportation Co. Willoughby has signed other contracts with Swift over the years, but the August 2004 contracts related to the specific truck at issue here.

[2] The guard was employed by U.S. Security, Inc.

unless the trailer's tandems were adjusted.[3] Willoughby informed the security guard that the tandems were broken and he did not know if he could move them. The guard said he did not care; the truck and trailer could not enter the facility unless the tandems were adjusted.

Willoughby exited the truck and Cribbs got in the drivers seat. Willoughby went to the side of the trailer to work on the tandems. Cribbs waited for Willoughby's signal, looked to make sure no one was in front of him, and pulled forward. The trailer wheel ran over Willoughby's foot causing him serious bodily injury.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

A summary judgment movant who bears the burden of proof on a claim must establish each element of the claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the movant meets this burden, "the nonmovant must go beyond the

---

[3] *See* Dkt. 163 n.1 for an image of a tandem system and release handle. Tandems are used to adjust the distribution of the trailer weight. Dkt. 25-3 at 25.

pleadings and designate specific facts showing that there is a genuine issue for trial." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *Id.* at 255.

**Analysis**

Swift argues that contractual releases signed by Willoughby preclude liability in this case as a matter of law. Willoughby argues that Swift has not met its burden to show that the releases are enforceable. The contracts signed by Willoughby contain the following provisions:

CONTRACTOR [Willoughby], and its employees and agents, hereby agree to release, indemnify, defend and hold COMPANY [Swift] and/or its officers, employees, agents or contractors harmless from any claim or suit asserted against COMPANY (either directly by CONTRACTOR or his estate, personal representative, heirs, successors or assigns, or as a cross-defendant or third-party defendant) arising from any property damage, personal injury, death or other loss suffered by CONTRACTOR under this Agreement, including but not limited to any such property damage, personal injury, death, or other loss caused by any act or omission, negligent, willful or otherwise, of COMPANY and/or its officers, employees, agents or contractors, including, but not limited to, any other person riding with CONTRACTOR as a team driver.[4]

and

---

[4] Contractor Agreement ¶8G, Swift Ex. B, Dkt. 76-2 at 6.

CONTRACTOR further agrees to release, indemnify, defend and hold COMPANY and/or its officers, employees, agents or contractors harmless from any claim or suit asserted against COMPANY (either directly by CONTRACTOR or his estate, personal representative, heirs, successors or assigns, or as a cross-defendant or third-party defendant), arising from any property damage, personal injury, death or other loss suffered by CONTRACTOR, in connection with the services to be provided by CONTRACTOR under this Addendum or the Contractor Agreement, by an act or omission, willful, negligent or otherwise, of COMPANY and/or its officers, employees, Students, agents or contractors.[5]

Under Arizona law, which the parties agree applies here, negligence releases are disfavored.[6] *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69, 73 (Ariz. Ct. App. 1994). Three conditions are necessary to enforcement of such releases: (1) there is no public policy impediment to the release; (2) "the parties did, *in fact*, bargain for the limitation;" and (3) the limiting language must be strictly construed against the party seeking to enforce it. *Morganteen v. Cowboy Adventures, Inc.*, 949 P.2d 552, 555 (Ariz. Ct. App. 1997) (emphasis in original) (citing *Salt River Project Agric. Improv. & Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198, 215 (Ariz. 1984)).

***Were the Releases "Bargained For?"*** While there apparently is no bright line test, case law sheds light on what "bargained for" means in this context. In *Valley Nat. Bank v. National Ass'n for Stock Car Auto Racing, Inc.*, (*NASCAR*) 736 P.2d 1186, 1189 (Ariz. Ct.

---

[5] Mentor Agreement ¶6, Swift Ex. C, Dkt. 76-3 at 2.

[6] While not directly applicable here, Arizona's disfavor for contractual limits on tort liability is expressed clearly in *Phelps v. Firebird Raceway, Inc.*, 111 P.3d 1003 (Ariz. 2005). The Arizona Supreme Court held in *Phelps* that Article 18, Section 5 of the Arizona Constitution, which provides that the defense "of assumption of risk, shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury," applies to an express contractual assumption of risk.

App. 1987), the court held a release enforceable because its meaning was sufficiently "brought home to the plaintiff." The court in *Sirek v. Fairfield Snowbowl, Inc.*, 800 P.2d 1291, 1295 (Ariz. Ct. App. 1990), held a release unenforceable because its language did not "reflect the clear intent of the parties to bargain away the right to hold one party responsible for its own negligence." In *Morganteen*, the court ruled that fact issues existed as to whether plaintiff intentionally relinquished her right to sue because "one's signature on a preprinted release may [not] be construed as a matter of law as an intentional relinquishment of a known right." 949 P.2d at 556.

In *Aranki v. RKP Investments, Inc.*, 979 P.2d 534, 537 (Ariz. Ct. App. 1999), the court noted that "The parties did not initial this provision. There is no evidence that this provision was discussed or negotiated. . . . We conclude that these release provisions do not immunize Zizkovsky and Glickston from liability because they do not appear to be negotiated terms." 979 P.2d at 210.[7] In *Salt River*, the Arizona Supreme Court reversed the trial and appellate courts' rulings that provisions releasing tort liability contained in a commercial sale agreement were enforceable as a matter of law. The Court acknowledged that in a commercial setting there may be sound reasons to bargain away recourse to tort recovery.

---

[7] Swift distinguishes *Arinka* on the ground that Willoughby was an experienced owner operator, as opposed to a "simple home buyer." The *Arinka* court does not characterize plaintiffs as "simple" and does not rely on the disparity of sophistication of the parties in its analysis, but to the extent it is relevant the court notes that Swift is not a simple real estate agent either. *Salt River* involved two sophisticated commercial entities, and the Arizona Supreme Court nonetheless was clear that the facts must show that a release was the product of a bargain.

The court ultimately concluded that the determination of the effectiveness of a tort waiver must focus on the facts surrounding the bargaining process. *Id.* at 213-15.

Swift relies heavily on *NASCAR* for its position that Willoughby cannot avoid enforcement of the releases because he was an experienced trucker who had signed numerous agreements over the years and should have known what he was doing. *NASCAR* is very different from this case. The plaintiff in *NASCAR* signed three documents to get into the pit area of a NASCAR sanctioned event. One was labeled at the top in large, bold type: "THIS IS A RELEASE OF LIABILITY," and in bold print released the defendants from all liability for negligence. Another contained the following the statement in large, bold type immediately below the line where plaintiff signed: "THIS IS A RELEASE, REGISTRATION AND INDEMNITY AGREEMENT." The third was a pit pass, which also contained a release of liability. The documents were all solely for the purpose of gaining entry into the pit area; they were not part of a larger contractual relationship between the parties. The *NASCAR* court noted that "[b]ecause of his racing experience, [the plaintiff] knew of the dangers at a race track." 736 P.2d at 1189. But it is overstating the holding of that case to say that the court's ruling was based on the plaintiff's experience. Instead, the court examined the form and language of release itself. *Id.* The court concluded that "the form of the release clearly brought home to the Prays its contents." *Id.* at 1190.[8]

---

[8] *NASCAR* is also procedurally distinct from the instant case. There, a jury rendered a general verdict in favor of defendants, indicating either a finding that the defendants were not negligent, or that the releases precluded recovery. The court concluded only that "Although (continued...)

6

In this case, Swift has failed to prove that the releases were "brought home" to Willoughby in any way. The releases are buried deep in the contracts and are not highlighted in any way. Willoughby has testified by deposition and affidavit that the releases were not negotiated in any way; he did not read all the provisions because Swift did not give him time; no one ever mentioned the release to him; and he did not realize he was waiving the substantial right to sue Swift for negligence.[9] Willoughby did sign a statement on August 3, 2004 attesting that he read and understood the provisions of the Contractor Agreement and was aware of the availability of Spanish translator to answer questions if necessary.[10] Swift points to this statement as proof that Willoughby knew about the release and was given an opportunity to ask questions about it. However, the primary purpose of the statement appears to have been to confirm that Willoughby was aware of his right to a translator if he did not understand English.

Brian Dudley, Swifts corporate representative, testified that the release provision of the Contractor Agreement was drafted by the Swift legal department and probably given to him by the recruiter at Swift's offices in a printed form. The language has changed through

---

[8] (...continued)
they claim that they never knew it was a release because the above language was folded under the clip board so it could not be seen, there was evidence to the contrary, and this created a question of fact for the jury. The court did not err in refusing to hold the releases invalid as a matter of law."

[9] Affidavit of Herbert Willoughby, P. Ex. 1, Dkt. 85-1; Dep. of Willoughy, P. Ex. 2, Dkt. 85-2.

[10] Swift Ex. F, Dkt. 123-3 at 30.

the years, but the same provision is standard in all owner/operator contractors. Dudley is not aware of any instance where the language has been changed at a contractors's request.[11]

Swift has submitted evidence that Willoughby was an experienced truck driver, and he intended to be bound by the contracts he signed.[12] Swift also submits that Willoughby received valuable pay and benefits in consideration for the contracts.[13] But none of Swift's evidence addresses the question whether the releases were "bargained for" as described by Arizona courts. Swift argues that Willoughby should not be permitted to reap the rewards of the contracts and now contend that the releases were not supported by bargained for consideration. But this case is not about failure or adequacy of consideration. The law, summarized above, does not equate "bargain" in this context with the concept of consideration, but with intentional conduct.

For these reasons, the court concludes that fact issues regarding whether the releases were bargained for as required by Arizona law preclude summary judgment.[14]

**Conclusion and order**

Because Swift has not met its burden to show that the contractual releases bar Willoughby's recovery as a matter of law, Swift's motion (Dkt. 76) is denied.

---

[11]   Dep. of Brian Dudley, Dkt. 121-2 at 11-15.

[12]   Dep. of Willoughby, Dkt. 76-6 at 10-16.

[13]   *See* Aff. of Brian Dudly, Dkt. 123-3 at 32-34.

[14]   The court declines to rule on the alternate grounds of public policy at this juncture, given the fact question on the issue of negotiation.

Signed at Houston, Texas on July 29, 2015.

_____
Stephen Wm Smith
United States Magistrate Judge